**FILED**

JAMES J. WALDRON, CLERK

**8/30/2016**

United States Bankruptcy Court
Newark, NJ

By:  /s/ Margaret Cohen, Deputy

UNITED STATES BANKRUPTCY COURT
DISTRICT OF NEW JERSEY

| | |
|---|---|
| In re:<br><br>MAC TRUONG,<br><br>           Debtor. | Case No.:      16-19929  VFP<br><br><br>Chapter  7 |
| MAC TRUONG,<br><br>           Plaintiff,<br><br>v.<br><br><br>325 BROADWAY ASSOCIATES LLC, ALEXIS<br>FELDMAN and DAVID A. KAMINSKY, ESQ.,<br><br>           Defendants. | Adv. Pro. No.:  16-1380 VFP |

## OPINION

**APPEARANCES**

| | |
|---|---|
| MAC TRUONG<br>Debtor-Plaintiff *Pro Se*<br>63 Van Reypen Street<br>Jersey City, NJ  07306 | CHARLES M. FORMAN, ESQ.<br>Trustee<br>LeClairRyan<br>One Riverfront Plaza<br>1037 Raymond Boulevard<br>Newark, NJ  07102 |
| DAVID A. KAMINSKY, ESQ.<br>Attorney for Defendants<br>David A. Kaminsky Associates, PC<br>325 Broadway, Suite 504<br>New York, NY  10007 | R. Kenneth Barnard, Esq.<br>Chapter 7 Trustee for the Estate of<br>  Rosemary Ida Mergenthaler<br>3305 Jerusalem Avenue<br>Wantaugh, NY  11793 |

**VINCENT F. PAPALIA, Bankruptcy Judge**

## I.    INTRODUCTION

This matter is before the Court on three applications filed in the captioned bankruptcy case:

1.    The Debtor's motion (the "Stay Motion") in the associated adversary proceeding, *Truong v. 325 Broadway Associates, LLC*, Adv. Dkt. No. 16-1380 (VFP), to obtain an injunction and money damages against his commercial landlord, landlord's counsel, and landlord's officer (the "Defendants") for continuing the eviction proceeding which the Defendants undertook in the Civil Court of the City of New York with respect to premises leased by the Debtor at 325 Broadway, New York, New York 10007, Unit #200 (Dkt. No. 5);

2.    The Defendants' motion to dismiss the Adversary Complaint under FED. R. CIV. P. 12(b)(6) / FED. R. BANKR. P. 7012(b) for failure to state a claim upon which relief can be granted and other related reasons (Dkt. No. 10); and

3.    The contested Notice of Proposed Abandonment (the "Notice") filed by Chapter 7 Trustee Charles M. Forman (the "Trustee") with respect to 3 Wood Edge Court, Water Mill (Suffolk County), New York 11976 (the "Property") (Dkt. No. 11).

The Debtor filed opposition and a reply in the adversary proceeding matter (Dkt. Nos. 11 and 12). Debtor filed an objection and supplemental objection to the Trustee's Notice of Proposed Abandonment (Main Dkt. Nos. 16 and 20), and the Trustee filed a reply thereto (Main Dkt. No. 22).   A Statement in support of abandonment was also filed by R. Kenneth Barnard, Esq. ("Barnard"), who serves as Chapter 7 Trustee in *In re (Rosemary) Mergenthaler*, Case No. 15-72040 (REG), filed in the United States Bankruptcy Court for the Eastern District of New York under the Honorable Robert E. Grossman (Main Dkt. No. 23).   Debtor was active in the *In re Mergenthaler* case, where he also claimed, but was found not to have, an interest in the Property which is property of the Mergenthaler bankruptcy estate.

2

Also scheduled was a hearing on the application for admission *pro hac vice* filed by David A. Kaminsky, Esq., on June 28, 2016 in the adversary proceeding (Dkt. No. 6). Although Debtor filed an objection on July 14, 2016 (Dkt. No. 9), and Kaminsky filed a reply (Dkt. No. 14), the Court properly entered the Order for *pro hac vice* admission on July 13, 2016 (Dkt. No. 8), as the deadline for objections had passed. Nonetheless, and as set forth below, the Court reviewed Debtor's objection and Kaminsky's reply and finds that the objection states no grounds for not entering (or for vacating) the Order permitting Kaminsky to appear *pro hac vice* (Dkt. No. 8).

## II.    STATEMENT OF FACTS

### A.  The State Court Proceedings and the Bankruptcy Filing

The following facts are largely undisputed. Defendant 325 Broadway Associates, LLC, ("Broadway"), as Landlord and Debtor as Tenant, entered a commercial lease (the "Lease") on September 19, 1994 for premises at 325 Broadway, New York, New York, Unit #200 (the "Leased Premises") (Dkt. No. 10, Kaminsky Cert., ¶ 5 and Ex. A, Lease). Kaminsky's law firm, David A. Kaminsky & Associates, P.C., represents Broadway in its landlord-tenant action against the Debtor in Civil Court of the City of New York (the "Civil Court") and in Debtor's appeals therefrom. When the last extension of the Lease term ended on December 31, 2014, the Debtor became a month-to-month tenant (Dkt. No. 10, Kaminsky Cert., ¶ 6 and Ex. B, last extension through Dec. 31, 2014). Kaminsky certifies and the Debtor does not dispute that Debtor sublet a portion of the Leased Premises to a subtenant in 2012 and began to collect rent from the subtenant (Dkt. No. 10, Kaminsky Cert., ¶ 7).

By "30 Day Notice" dated February 9, 2016 (the "Termination Notice"), Broadway advised Debtor that his month-to-month tenancy would terminate on March 31, 2016 and that he would have to vacate the Leased Premises by that date. (Dkt. No. 10, Kaminsky Cert., ¶ 8 and Ex. C). The Debtor thereafter stopped paying the rent and did not vacate the Leased Premises (Dkt. No.

10, Kaminsky Cert., ¶ 9).[1]  The Debtor, however, continued to collect rent from a subtenant after

the Termination Notice.  See Amended Complaint (Dkt. No. 3 at ¶¶ 22-26 and Count One).

On April 1, 2016, Broadway (through Kaminsky's law firm) filed a "Holdover Notice of

Petition" in Civil Court for a judgment for possession and rent payment.  Debtor answered and

filed a counterclaim on May 16, 2016 (Dkt. No. 10, Kaminsky Cert., ¶¶ 10-11 and Exs. D and E).

Trial began on May 19, 2016, but was adjourned to May 25, 2016, when the Debtor indicated after

a lunch break that he was not feeling well and was seeking the attention of a doctor (Dkt. No. 10,

Kaminsky Cert., ¶¶ 12-16).  According to Kaminsky, the Civil Court Judge advised the Debtor to

appear in court on May 25, 2016 and the Debtor acknowledged that he was advised of the new

date.  *Id.* at ¶ 16.

The Debtor filed the instant bankruptcy petition on May 23, 2016 and sent Kaminsky and

the Civil Court Judge a "Notice of Proceeding Being Stayed" under 11 U.S.C. § 362(a) (Dkt. No.

10, Kaminsky Cert., ¶ 18 and Ex. J).  On the May 25, 2016 Civil Court return date at which the

Debtor did not appear, Kaminsky briefed and argued to the Court that the Leased Premises were

not subject to the stay because the commercial lease had terminated prepetition (Dkt. No. 10,

Kaminsky Cert., ¶ 19 and Ex. 1).    Kaminsky indicates that Debtor was served with this

memorandum and was instructed by the Civil Court to appear on May 26, 2016 to address the issue

of whether the Civil Court Action was stayed.  Debtor (per Kaminsky) told the Civil Court that he

would not appear (Dkt. No. 10, Kaminsky Cert., ¶¶ 19-25).

On May 31, 2016, the Civil Court,  by the Hon. Erika M. Edwards, issued a Decision and

Order, which found that the stay did not apply to the Leased Premises pursuant to 11 U.S.C.

§ 362(b)(10) and that the Debtor's asserted interest in the Lease was not property of the estate

---

[1] The May 31, 2016 Decision of the Hon. Erika M. Edwards, Civil Court of New York, indicates that the tenancy was
terminated after Broadway and Debtor could not agree to new terms (Dkt. No. 10, Kaminsky Cert., Ex. L, Edwards
Decision).

pursuant to 11 U.S.C. § 541(b)(2).  As a result, the Civil Court granted Broadway both a Judgment for Possession and a Warrant of Eviction (Dkt. No. 10, Kaminsky Cert., ¶ 26 and Ex. L).  The Civil Court also held that the stay did apply to any action by the Landlord to collect rent from the Debtor (Dkt. No. 10, Kaminsky Cert., Ex. L at 5, 7).

Kaminsky stated in his reply to Debtor's objection to Kaminsky's *pro hac vice* retention on May 30, 2016, that Debtor filed a Complaint against Judge Edwards; and that, on June 6, 2016, he filed a Motion for Reconsideration of her Decision and Order; and on June 21, 2016 filed an Order to Show Cause to vacate her "Inquest Judgment" (Dkt. No. 14, Kaminsky Reply, ¶ 36).  Both the Order to Show Cause and Motion for Reconsideration were denied by Judge Edwards and appealed by Debtor to New York's Appellate Division, which issued a temporary stay pending that Court's decision on Debtor's Motion to Vacate the Warrant for Eviction (Dkt. No. 15, Debtor's Motion filed Aug. 17, 2016, Orders entered on July 14, 2016 by Civil Court, Exs. 5 and 6; Order entered on July 22, 2016 by the Appellate Division, Ex. 8).  However, based on subsequent pleadings filed by the Debtor, the Appellate Division denied the Motion to Vacate by Order entered on August 12, 2016 (Dkt. No. 15, Debtor's Motion filed Aug. 17, 2016, Ex. 1, Order entered Aug. 12, 2016 by the Appellate Term, Supreme Court of New York, denying Debtor's Motion to Vacate Warrant of Eviction).[2]  Debtor's new pleadings also ask this Court to stay the State Court eviction proceedings.

---

[2] On August 16, 2016, the Debtor submitted a request for entry of an Order to Show Cause why the State Court eviction proceedings should not be stayed and declaring that plaintiff is violating the automatic stay by continuing those proceedings and thereby preventing the Debtor from collecting rent from his subtenant.  This is essentially the same relief sought by Debtor in the Stay Motion.  Shortly thereafter, on August 17, 2016, Debtor filed a Notice of Motion seeking virtually identical relief.  Because the Notice of Motion was the later-filed document, the similarity of the relief requested by these pleadings, and for the other reasons noted below, the Court declined to enter the Order to Show Cause and will address the Notice of Motion on its scheduled return date (September 20, 2016).

### B.  The Adversary Proceeding

On May 31, 2016, the Debtor filed an Adversary Complaint (Adv. Pro. No. 16-1380), against Broadway, Kaminsky and Alexis Feldman ("Feldman") and an Amended Complaint on June 6, 2016 (Dkt. No. 3) with a jury demand.  The Amended Complaint identifies Feldman as an officer of Broadway (Dkt. No. 3, ¶ 7).  The six-count Amended Complaint alleges the following claims:

Count 1.  Tortious interference against Broadway with respect to the subtenancy and a demand for $84,000 in actual damages, plus $168,000 in punitive damages ($252,000 total demand).

Count 2.  Defamation against Broadway and Feldman for calling Debtor a "thief" during a hallway discussion at the courthouse on May 19, 2016, with a demand for $100,000 in actual damages, plus $200,000 in punitive damages ($300,000 total demand).

Count 3.  Libel against Broadway and Kaminsky for referring to Debtor as "a disbarred attorney and known on Court records to be a liar and a fraud," with a demand for $100,000 in actual damages, plus $200,000 in punitive damages ($300,000 total demand).

Count 4.  Libel against Broadway and Kaminsky for allegedly violating the May 12, 2005 Order of the Third Circuit in *Truong v. Baker,* which Debtor states enjoined parties from referring to certain findings of forgery,[3] with a demand for $1,000,000 in actual damages, plus $2,000,000 in punitive damages ($3,000,000 total demand).

Count 5.  Stay violation against Broadway for proceeding with the eviction action, with a demand for $50,000 in actual damages plus $100,000 in punitive damages ($150,000 total demand).

---

[3] Although Debtor has filed numerous pleadings and exhibits, he has not provided the Court with a copy of the May 12, 2005 Order or properly identified the referenced Third Circuit case by docket number.  Thus, the Court is not in a position to evaluate the terms of that Order.

Count 6.  Declaratory judgment stating that the Judgment of Possession entered by the Civil Court is null and void.

### III.    CONCLUSIONS OF LAW

These applications require the Court to decide the following legal issues:

(1)    Whether the Debtor on the petition date had any interest in the Lease and/or the Leased Premises subject to the automatic stay and, more specifically, whether the February 9, 2016 termination notice under N.Y. REAL PROP. LAW § 232-a (McKinney 2016) cut off all Debtor's interest in the Leased Premises or whether the Debtor's continued possession was property of the estate.

(2)    Whether Kaminsky is prohibited from serving as counsel in this case on the basis that he may be called as a witness.

(3)    Whether the Trustee exercised proper business judgment under 11 U.S.C. § 554(a) in abandoning the property at 3 Wood Edge Court, Water Mill (Suffolk County), New York 11976 (Dkt. No. 11) (the "Property").

(4)    Whether the Adversary Proceeding should be dismissed under FED. R. CIV. P. 12(b)(6) / FED. R. BANKR. P. 7012(b) for failure to state a claim.

### A.    Application of the Automatic Stay Under 11 U.S.C. §§ 541(b)(2) and 362(b)(10)

Three sections of the Bankruptcy Code are consistent in their exclusion of a nonresidential lease which expires prepetition under applicable nonbankruptcy law from being property of the bankruptcy estate or enjoying the protection of the automatic stay:

11 U.S.C. § 541(b)(2) states in relevant part:

(b) Property of the estate does not include— . . .

(2) *any interest* of the debtor as a lessee under a lease of nonresidential real property that has terminated at the expiration of the stated term of such lease . . . .

11 U.S.C. § 541(b)(2) (emphasis supplied).

7

11 U.S.C. § 362(b)(10) provides:

(b) The filing of a petition . . . does not operate as a stay— . . .

(10) under subsection (a) of this section, of any act by a lessor to the debtor under
a lease of nonresidential real property that has terminated by the expiration of the
stated term of the lease before the commencement of . . . a case under this title to
obtain possession of such property . . . .

11 U.S.C. § 362(b)(10).

Further, 11 U.S.C. § 365(c)(3) provides that the "trustee may not assume or assign any . . .

unexpired lease of the debtor . . . if . . .(3) such lease is of nonresidential real property and has been

terminated under applicable nonbankruptcy law prior to the order for relief." *In re Scarsdale Tires*

*Inc.*, 47 B.R. 478, 480 (S.D.N.Y. 1985) ("It is settled law that a lease or license that was terminated

before the filing of a bankruptcy petition is neither affected by the automatic stay under 11 U.S.C.

§ 362(a) nor may it be assumed by the debtor under 11 U.S.C. § 365").

In the instant case, Judge Edwards, in her May 31, 2016 Decision and Order determined

that the "predicate notice" issued by Broadway on February 9, 2016 cut off the Debtor's interest

in the Leased Premises by operation of New York state law without the need for further judicial

action (Dkt. No. 10, Kaminsky Cert., Ex. L, at 5, 6).  On that basis, the Civil Court found that,

under 11 U.S.C. §§ 541(b)(2) and 362(b)(10), Debtor had no interest in the Leased Premises to

qualify as property of the estate, and Debtor was afforded no protection by the stay from entry of

the judgment of possession and warrant of removal (Dkt. No. 10, Kaminsky Cert., Ex. L, at 5, 7).

The Civil Court found that the stay *did* apply to the demand by Broadway for a money judgment

("for use and occupancy and attorney's fees") and denied the request of Broadway for monetary

damages (Dkt. No. 10, Kaminsky Cert., Ex. L, at 5, 7).

In reaching its decision, the Civil Court relied on the case of *In re Neville*, 118 B.R. 14, 17

(Bankr. E.D.N.Y. 1990) (Eisenberg, J.), among other authorities.   There, the Court cautioned that

bankruptcy courts should not independently review the issues which led a State Court to enter a

judgment for possession ("A judgment of the State Court has preclusive effect in the bankruptcy context, and therefore, a Bankruptcy Court should not undertake an independent review of the issues previously decided in the State Court"). *Id.* In this regard, the *Neville* court was generally referring to the *Rooker-Feldman* doctrine, discussed in more detail in the abandonment section below. This doctrine essentially holds that a federal court may not sit in review or as an appellate court with respect to a prior state court judgment. This Court agrees with that basic proposition and will not review Judge Edwards's Order, except to determine whether the stay applies to the Landlord's eviction proceedings, which the Debtor seeks to stay by his pleadings.

In *In re Neville*, landlord and debtor-tenant under a nonresidential lease were subject to a prepetition agreement, judgment of possession and warrant of eviction which terminated the debtor's rights to the premises by a date certain; i.e., October 31, 1989. *In re Neville*, 118 B.R. at 16. The parties, by agreement, extended the deadline for removal conditioned on further performance which the debtor did not meet. Nine months later on May 17, 1990, the State Court entered an Order vacating all prior stays, and on May 21, 1990, the debtor filed a Chapter 11 petition to try to stay eviction. Nevertheless, the eviction went forward two days later on May 23, 1990. *In re Neville*, 118 B.R. at 16. The Bankruptcy Court found that the debtor's rights in the premises were cut off on October 31, 1989 and that 11 U.S.C. § 362(b)(10) applied so that there was no stay in effect. In so holding, the court reasoned that:

> [t]he language of Section 362(b)(10) clearly indicates that it is not necessary for a landlord to move in the Bankruptcy Court to vacate the automatic stay when the Debtor is operating under lease of non-residential real property that has terminated by the expiration of the stated term of the lease before the commencement of or during a case under this title.

*In re Neville*, 118 B.R. at 16.

The court further reasoned that, even if section 362(b)(10) did not apply, debtor's only remaining interest under N.Y. REAL PROP. LAW § 232-c would be a holdover tenancy which was not *assignable* under 11 U.S.C. § 365(c)(3), as that section prohibits assumption and assignment

9

of a "lease . . . of nonresidential real property [which] has been terminated under applicable

nonbankruptcy law prior to the order for relief." *In re Neville*, 118 B.R. at 18.  As additional

support for its decision, the *Neville* court noted that, if a commercial holdover tenant's "'equitable

possessory interests were protected by the automatic stay,'" that "would effectively nullify section

362(b)(10), which was purposely placed into the Bankruptcy Code to deal with situations such as

this." *Id.* at 18.

Similarly, in *In re Policy Realty Corp.*, 242 B.R. 121, 127-28 (S.D.N.Y. 1999) (reversing

the Bankruptcy Court), *aff'd*, 213 F.3d 626 (2d Cir. 2000) (for substantially the reasons stated by

the District Court), the debtor-tenant under a nonresidential lease was subject to a notice of

termination which became effective nine (9) days prepetition.  The District Court first observed:

> A lease may be terminated under New York law by operation of a conditional
> limitation. . . . [T]he landlord sends the tenant a notice of termination of
> the lease, stating that the lease will be deemed terminated upon a specified date due
> to tenant's default. . . .  The lease is terminated when the time expires, rather than
> on any further act by the landlord.

*In re Policy Realty*, 242 B.R. at 128 (internal citations omitted).  Because the lease had been

terminated prepetition by operation of state law, the *Policy Realty* court held that 11 U.S.C.

§ 362(b)(10) applied and that it was not necessary for the landlord to move in the Bankruptcy

Court to vacate the stay.  *In re Policy Realty*, 242 B.R. at 129.  The court further held that the

holdover tenant's interest in the terminated lease was not property of the estate under the express

language of 11 U.S.C. § 541(b)(2).  *Id.* at 128.  In so holding, the *Policy Realty* court rejected the

Debtor's argument that its possessory interest in the premises was sufficient to trigger the stay and

determined that such an argument "would undermine the purpose of §§ 362(b)(10) and 541(b)(2)."

*In re Policy Realty*, 242 B.R. at 129.  In reaching its decision, the *Policy Realty* court relied on *In

re Neville* and *In re Jarman*, 118 B.R. 380, 382 (Bankr. D.S.C. 1989).  ("'It would be chaotic if

every non-residential lease termination could ultimately be frustrated by the last minute filing of a

Chapter 11 proceeding in federal court.'")  *In re Policy Realty*, 242 B.R. at 129 quoting *In re

10

*Jarman*, 118 B.R. at 382).  In this case, the Lease was also terminated prepetition on March 31, 2016 by the Termination Notice so the same result obtains here: the eviction proceedings against the Debtor are not stayed, and the Debtor's interest in the Lease and Leased Premises (if any) is not property of the estate.

Other New York State Court cases confirm the validity of the notice to terminate to foreclose the debtor's interest in the premises without further action, sometimes in the context of a bankruptcy proceeding. *Little v. Bright Holding Corp.*, 155 Misc. 2d 686, 687-88 (N.Y. Civ. Ct. 1992) (a debtor-subtenant at sufferance who refused to vacate the premises had no interest which the stay could protect in bankruptcy where the primary tenant had stipulated prepetition that the lease had terminated).  *See also Fitz & Pal v. Int'l Pipe Fabrication, L.L.C.*, 188 Misc. 2d 687, 688, 690 (N.Y. Dist. Ct. 2001).  In that case, the court held that where a short-term nonresidential lease expired prepetition and debtor-tenant filed a Chapter 11 petition some six (6) weeks later, no stay was in effect on the petition date, and the lease/premises were not property of the estate pursuant to 11 U.S.C. §§ 362(b)(10) and 541(b)(2).  *Id.* at 690-91.  The debtor's mere "possession" of the premises gave rise to no right which could be protected under the Code, citing *In re Neville* and *In re Policy Realty*.  *Fitz & Pal,* 188 Misc. 2d at 691.

This Court finds the reasoning of cases such as *Neville* and *Policy Realty* to be persuasive and controlling in this case as they give effect to the plain meaning and obvious intent of sections 362(b)(10) and 541(b)(2).  Under section 541(b)(2), property of the estate does not include "any interest of the debtor as a lessee under a lease of nonresidential real property that has terminated at the expiration of the stated term of such lease before the commencement of the case."  Certainly, the asserted (and wrongful) continuing possessory interest of a debtor in a terminated lease such as this one includes "any interest of the debtor" as a holdover tenant (which, by definition, occurs only after a lease is terminated).  The same holds true as to the Debtor's claimed interest to collect rents from a subtenant in violation of the Lease.

11

In this Court's view, allowing a holdover tenant's asserted possessory interest to trump the plain language and intent of those sections would render them a "nullity," as virtually every holdover tenant in bankruptcy remains in actual or constructive (through a subtenant) possession of the leased premises. Indeed, that is typically why those debtors (and this one, in particular) file for bankruptcy in the first place; i.e., in an effort to continue their occupancy, notwithstanding termination of their lease under state law. Accordingly, this Court denies the Debtor's motion to enjoin the State Court eviction proceedings and to hold the Defendants in contempt. For the same reasons, the Court will dismiss Counts Five and Six of the Debtor's Complaint as they are based on the same actions and claims.

In so holding, this Court recognizes that other courts have reached different results in similar (though not identical) circumstances. *See In re Mad Lo Lo LLC*, 2009 WL 2902567 at *1, *3 (Bankr. S.D.N.Y. May 28, 2009) (Glenn, J.) and *In re Sweet N Sour 7th Ave. Corp.*, 431 B.R. 63, 67-69 (Bankr. S.D.N.Y. 2010) (Glenn, J.). In both cases, a warrant of eviction had issued prepetition, and each debtor-tenant filed a Chapter 11 action to stay the eviction. In *In re Mad Lo Lo*, the court held that the warrant of eviction did not constitute "terminat[ion] by the expiration of the stated term" under 11 U.S.C. § 362(b)(10) and further distinguished *In re Policy Realty* in which the debtor-tenant (who sublet the premises in their entirety) was not "in possession" on the bankruptcy date. *In re Mad Lo Lo*, 2009 WL 2902567 at *3. The court cited 3 COLLIER ON BANKRUPTCY ¶ 362.05[10] (Alan N. Resnick & Henry J. Sommer eds., 15th rev. ed.) (parsing section 362(b)(10) for the general proposition that *possession may* give the debtor an interest to which the stay may apply). *Accord In re Sweet N Sour 7th Ave. Corp.*, 431 B.R. at 68 (the court noted that *In re Mad Lo Lo* applied and relied on *In re Éclair Bakery, Ltd.*, 255 B.R. 121, 133 (Bankr. S.D.N.Y. 2000) for the principle "that under New York Law the automatic stay applies where a court enters a warrant of eviction and stays its application").

12

Both *In re Mad Lo Lo* and *In re Sweet N Sour* rely on *In re 48th Street Steakhouse, Inc.*, 835 F.2d 427, 430 (2d Cir. 1987), *cert. denied*, 485 U.S. 1035 (1988) for the proposition that "a mere possessory interest in real property, without any accompanying legal interest, is sufficient to trigger the protection of the automatic stay." This Court respectfully disagrees with that proposition for the reasons stated above regarding the plain language and intent of sections 362(b)(10) and 541(b)(2) and based on the reasoning of the *Neville* and *Policy Realty* cases.

The Court also finds the *Mad Lo Lo* and *Sweet N Sour* cases are distinguishable because they relied on the Second Circuit's decision in *In re 48th Street Steakhouse* that was itself based on a bankruptcy case filed before the 1984 effective date of 11 U.S.C. §§ 362(b)(10) and 541(b)(2), which clarify that a debtor has no residual interest in a nonresidential lease which expires prepetition. 11 U.S.C. §§ 362(b)(10) and 541(b)(2) were added simultaneously to the Code by PL 98-353, §§ 363(b) and (a), respectively, on July 10, 1984, effective for cases filed ninety days after that date (PL 98-353, § 553(a) for effective date) (§ 362(b)(10) was originally designated § 362(b)(9)). Neither of those plainly applicable statutory provisions is mentioned in the *48th Street Steakhouse* case. Additionally, *Policy Realty*, which was decided after the 1984 amendments, was affirmed by the Second Circuit substantially for the reasons stated by the District Court. Thus, the Second Circuit also recognized the effect of the 1984 amendments with regard to this issue. Further, as was noted by the *Policy Realty* court, *48th Street Steakhouse* is also distinguishable because, in that case, the notice of termination was sent *after* the bankruptcy petition was filed. *In re Policy Realty*, 242 B.R. at 129. Thus, this Court respectfully declines to follow *In re Mad Lo Lo* and similar decisions and will deny Debtor's motion as noted above.[4] In

---

[4] In his latest submission, the Debtor also argues that the stay applies because he sublet the premises in violation of the Lease and collects rents from the subtenant, also in violation of the Lease. See Section 11 of the Lease. (Dkt. No. 10, Kaminsky Cert., Ex. A). In other words, the Debtor argues that the stay should apply because he breached the Lease. Because a party seeking equitable remedies (such as the extraordinary injunctive and other relief Debtor seeks here) must act equitably, this argument is rejected. *In re Jenkins*, 434 B.R. 604, 610 (Bankr. D. Colo. 2010) ("Fundamental among equitable principles is the precept that one who seeks equity must do equity"); *In re Blue Coal Corp.*, 166 B.R. 816, 821 (Bankr. M.D. Pa. 1993) ("Bankruptcy Courts are essentially courts of equity and their

this regard, the Court also agrees with that portion of Judge Edwards's decision which provides

that, while the stay does not apply to Broadway's eviction proceedings, it does apply to any efforts

to collect rents or other damages from the Debtor.

### B. Contested *Pro Hac Vice* Retention

On June 28, 2016, David A. Kaminsky, Esq. filed an application in the adversary

proceeding for *pro hac vice* retention under D.N.J. LBR 9010-1(b), and the Clerk's Office set an

objection deadline of July 5, 2016 (Dkt. No. 6).  No objections were filed by the due date of July

5, 2016.  The Court entered the Order admitting Kaminsky *pro hac vice* on July 13, 2016 (Dkt.

No. 8, docketed July 15, 2016).  On July 14, 2016, Debtor filed a late objection which asserts that

Kaminsky cannot be retained on the basis that he is a Defendant in the action and a potential

eyewitness against a co-defendant, Feldman (Dkt. No. 9, Debtor Obj., ¶¶ 6-7).  Kaminsky on

August 1, 2016 filed a reply in which he asserts that there is no conflict of interest as Defendant

Feldman and he are united in their defense against Debtor and all Defendants have signed a written

waiver of any alleged conflicts (Dkt. No. 14, ¶¶ 42-43).  Neither party has cited any law for its

position (nor apparently was aware that the Order was entered on July 13, 2016 before the Debtor

filed his objection).

To the extent that the Debtor's objection sought disqualification of Kaminsky, a motion to

disqualify is viewed with disfavor, and disqualification is a "drastic measure," which should only

be used only when necessary. *Schiessle v. Stephens*, 717 F.2d 417, 420 (7th Cir. 1983);

*Commonwealth Ins. Co. v. Graphix Hot Line, Inc.*, 808 F. Supp. 1200, 1208-09 (E.D. Pa. 1992)

(denying motion to disqualify which the court deemed filed primarily to gain a "tactical

---

proceedings are inherently proceedings in equity") (internal citations omitted).  Further, the illegal sublease does not
in any way alter this Court's analysis for the reasons described above, including section 541(b)(2)'s application to
"any interest" of the former tenant under the terminated Lease.  Indeed, the *Neville* court rejected a similar argument
made by the holdover tenant in that case based upon the alleged breach of a related contract by the landlord.  118 B.R.
at 18-19.  If Debtor believes he has a claim based on the sublease, he certainly knows how to assert that claim.
However, that claim has no relevance to the stay issues before this Court.

advantage"). "The burden rests on the party seeking disqualification to put forth enough evidence to show a likelihood that the attorney will be a necessary witness at trial." *United States v. Boston Scientific Neuromodulation Corp.*, 2013 WL 2404816 at *7 (D.N.J. May 31, 2013). New Jersey RPC 3.7(a) generally (but not absolutely) prohibits an attorney who may be a necessary witness from acting as an advocate *at trial*, but does not prevent representation at the pretrial stage. *Main Events Prods. v. Lacy*, 220 F. Supp. 2d 353, 356-57 (D.N.J. 2002); *Tangible Value, LLC v. Town Sports Int'l Holding, Inc.*, 2012 WL 4660865 at *3 (D.N.J. Oct. 1, 2012).

New Jersey RPC 3.7 "Lawyer as Witness" states in relevant part:

(a) A lawyer shall not act as an advocate *at a trial* in which the lawyer is likely to be a necessary witness unless:

    (1) the testimony relates to an uncontested issue;
    (2) the testimony relates to the nature and value of legal services rendered in the case; or
    (3) disqualification of the lawyer would work substantial hardship on the client.

New Jersey RPC 3.7 (emphasis supplied). This restriction on representation *at trial* arises from the concern that the fact-finder (particularly if a jury) may confuse testimony and advocacy, an issue which does not arise at the pretrial phase. *Main Events Prods.*, 220 F. Supp. 2d at 356-57. In this case, the Complaint is only recently filed and there is no trial that is about to commence. Based on the authorities cited above, there is no reason to disqualify Kaminsky at this early stage of the proceedings. If and when the case proceeds to trial, this issue may need to be addressed, but there is certainly no need or basis to impose this "drastic measure" now. Thus, this Court's prior Order admitting Kaminsky *pro hac vice* remains in effect, without prejudice to Debtor's right to raise this issue again, if and when the case proceeds to trial.

15

**C.** **Abandonment of Estate Property by the Trustee Under 11 U.S.C. § 554(a)**

By Notice of Proposed Abandonment docketed on July 14, 2016, Chapter 7 Trustee Charles M. Forman, through counsel, seeks to abandon real property at 3 Wood Edge Court, Water Mill (Suffolk County), New York 11976 (Dkt. No. 11).  The Debtor scheduled the Property on Schedule A/B with a value of $2.5 million and claimed that the value of his interest is $625,000 (25%).  Debtor scheduled no encumbrances against the Property on Schedule D (Dkt. No. 1).  The Notice of Proposed Abandonment indicates that the Trustee abandoned the Property on two bases:

(1) The Property is not property of the estate.  An Order entered in the Supreme Court of New York on August 6, 2015 declared null and void the Deed purporting to convey a 25% interest to the Debtor (Main Dkt. No. 22, Trustee Reply, Ex. B, Aug. 6, 2015 Order at 2) (the "August 6, 2015 Order"); and

(2) The Property is overencumbered, the Trustee having discovered the following liens which total approximately $3.5 million and are actually in excess of these amounts based on the proofs of claim filed by these parties in the Mergenthaler case (as noted below):

$   400,000     to Daniel Perla Assocs.
$1,658,528      to Dean Osekavage
$1,437,228      to Ruediger Albrecht

(Dkt. No. 11, Notice of Proposed Abandonment).  The Clerk's Office served the Notice of Proposed Abandonment on July 17, 2016 via the Bankruptcy Noticing Center (Dkt. No. 12).

The Debtor filed an objection on August 1, 2016 (Main Dkt. No. 16) and supplemental objection on August 10, 2016 (Main Dkt. No. 20).  In addition to the Reply Certification filed by Chapter 7 Trustee Charles M. Forman, Esq. on August 12, 2016 (Main Dkt. No. 22), R. Kenneth Barnard, Esq., the Chapter 7 Trustee for the Estate of Rosemary Mergenthaler, filed an Affirmation in support of abandonment on August 12, 2016 (Main Dkt. No. 23).  Ms. Mergenthaler is the Debtor who owns the subject Property, as is set forth in the August 6, 2015 Order (declaring null and void a Quitclaim Deed which purported to transfer an interest in the Property to the Debtor).

The Debtor argues: (1) that the August 6, 2015 Order is null and void because the Supreme Court of New York did not have jurisdiction to enter it; (2) that the Property is now worth $2.85 million; and (3) that the three liens identified by the Trustee are lower than the identified amounts or have no validity because the underlying judgment is void (Dkt. Nos. 16 and 20).   Debtor bases his argument about these liens on the proofs of claim which these lienholders filed in *In re Mergenthaler*, Case No. 15-72040 (REG) (Bankr. E.D.N.Y.) for which the claims register indicates:

(1) Perla claim #12-1 for $771,425 based on a mortgage recorded on February 4, 2011 in the original amount of $450,000.  According to the face of the note and mortgage, Debtor was not a party to this transaction;

(2) Albrecht claim #14-1 for $1,457,228 on a Judgment by Confession in the amount of the $600,000 face value of the note, plus $857,228 in interest.  The accompanying affidavit of confession is dated March 4, 2011.  According to the face page of the Judgment, Debtor was not a party to this action;

(3) Dean Osekavage claim #5-2 for $2,096,976 based on an Order and Judgment entered on January 14, 2013 in the Supreme Court of New York (entered in the amount of $1,658,528) to attach to Ms. Mergenthaler's interest in the Property.  Although the Judgment was entered by default, the extensive recitations therein indicate that Ms. Mergenthaler was noticed to appear and failed to do so.  As a result, judgment was entered against both Mr. and Ms. Mergenthaler.  Also, according to the face page of the Judgment, Debtor was not a party to this action.

Case No. 15-72040 (REG) (Bankr E.D.N.Y.) (Claims register).  Debtor argues, without legal or factual support, that: (1) the Albrecht claim is for only $600,000 (because only the face amount of the loan was recorded on the face page of the proof of claim and even though the Confession of

Judgment expressly includes interest); and (2) the Osekavage judgment is not *res judicata* because it was based on a default judgment (Dkt. Nos. 16 and 20, Debtor's Obj.).

The Trustee's Reply specifies the documents on which the Trustee relied in determining to abandon the Property. These are the August 6, 2015 Order declaring Debtor's quitclaim deed null and void and an Order entered on March 25, 2014 in Supreme Court of New York in the case *Osekavage v. Mergenthaler*, Index No. 29626/11. That Order memorializes the liens against the Property and authorizes the State Court Receiver to sell it (Dkt. No. 22, Exs. A, B, C).[5]

To the extent that the Debtor's objections are based on objections to underlying Orders in the New York Supreme Court, this Court under the *Rooker-Feldman* doctrine has no jurisdiction to consider them. The *Rooker-Feldman* doctrine prevents a federal trial court from exercising appellate jurisdiction over a state court judgment. *Rooker v. Fidelity Trust Co.*, 263 U.S. 413 (1923); *D.C. Court of Appeals v. Feldman*, 460 U.S. 462 (1983). "[T]he *Rooker-Feldman* doctrine divests a lower federal court of subject matter jurisdiction of an action if the relief requested would effectively reverse a state court decision or void its ruling." *In re Sabertooth*, 443 B.R. 671, 679 (Bankr. E.D. Pa. 2011), *aff'd, In re Green Goblin, Inc.*, 2014 WL 5800601 (E.D. Pa. Nov. 16, 2014). The Third Circuit criteria for applying the *Rooker-Feldman* doctrine are:

(1) the federal plaintiff lost in state court;
(2) the plaintiff "complain[s] of injuries caused by [the] state-court judgments";
(3) those judgments were rendered before the federal suit was filed;
(4) the plaintiff is inviting the district court to review and reject the state judgments.

*Great W. Mining & Mineral Co. v. Fox Rothschild LLP*, 615 F.3d 159, 166 (3d Cir. 2010) (quoted, internal citations omitted), *cert. denied*, 563 U.S. 904 (2011). The court in *Great W. Mining* parsed

---

[5] The Bankruptcy Court in *In re Mergenthaler*, Case No. 15-72040 (REG) (Bankr. E.D.N.Y.) reordered the sale of the Property on July 26, 2016 by the Chapter 7 Trustee in that case (Dkt. No. 201). Creditor Albrecht, *pro se, supra*, filed a motion on August 8, 2016, returnable on August 31, 2016, to vacate that Order (Dkt. No. 213). These matters are referenced in Main Dkt. No. 23, Barnard Affirm., Ex. E.

*Exxon Mobil Corp. v. Saudi Basic Indus.,* 544 U.S. 280, 284 (2005), which reiterated the

fundamental principle:

> The *Rooker-Feldman* doctrine, we hold today, is confined to cases of the kind
> from which the doctrine acquired its name: cases brought by state-court losers
> complaining of injuries caused by state-court judgments rendered before the district
> court proceedings commenced and inviting district court review and rejection of
> those judgments.

*Exxon Mobil*, 544 U.S. at 284.

In fact, Chapter 7 Trustee Barnard in *In re Mergenthaler*, Case No. 15-72040 (REG)

(Bankr. E.D.N.Y.), notes that the U.S. District Court for the Eastern District of New York has

*already* held that the *Rooker-Feldman* doctrine prevented the District Court from considering the

validity of the Osekavage lien (Main Dkt. No. 23, Barnard Affirm.). *And see Osekavage v.*

*Mergenthaler* (*In re Mergenthaler*), 2015 U.S. Dist. LEXIS 56257 at *11 (E.D.N.Y. April 29,

2015) (denying Peter Mergenthaler's application to review the Osekavage State Court Judgment

based on the *Rooker-Feldman* doctrine); and 2016 U.S. Dist. LEXIS 5435 at *4-*5 (E.D.N.Y. Jan.

15, 2016) (denying reconsideration of the above).  Further, this Debtor is not even a party to many

of the judgments and transactions he now seeks to avoid through this particular case after having

failed to do so in the Mergenthaler bankruptcy case.  Thus, even without *Rooker-Feldman*, this

Debtor would have no standing to avoid those claims (i.e., Perla, Albrecht and Osekavage).

Further, the court that does have jurisdiction to decide those claims is the Bankruptcy Court for

the Eastern District of New York.  That court has already done so and approved the sale of the

subject property over similar objections made by this Debtor.  This Court has no reason, authority

or basis to review that court's Orders or the Orders and Judgments of the State Court and will not

do so here.

Having rejected the Debtor's arguments regarding the lien and judgment claims against the

subject Property, the Court will now determine whether Trustee's proposed abandonment is a

proper exercise of his business judgment.

11 U.S.C. § 554 ("Abandonment of property of the estate") states in full:

(a) After notice and a hearing, the trustee may abandon any property of the estate that is burdensome to the estate or that is of inconsequential value and benefit to the estate.

(b) On request of a party in interest and after notice and a hearing, the court may order the trustee to abandon any property of the estate that is burdensome to the estate or that is of inconsequential value and benefit to the estate.

(c) Unless the court orders otherwise, any property scheduled under section 521(a)(1) of this title not otherwise administered at the time of the closing of a case is abandoned to the debtor and administered for purposes of section 350 of this title.

(d) Unless the court orders otherwise, property of the estate that is not abandoned under this section and that is not administered in the case remains property of the estate.

11 U.S.C. § 554. FED. R. BANKR. P. 6007(a) ("Abandonment or Disposition of Property")

requires the Trustee to

(a) . . . . give notice of a proposed abandonment or disposition of property to the United States trustee, all creditors, indenture trustees, and committees elected pursuant to § 705 or appointed pursuant to § 1102 of the Code. A party in interest may file and serve an objection within 14 days of the mailing of the notice, or within the time fixed by the court. If a timely objection is made, the court shall set a hearing on notice to the United States trustee and to other entities as the court may direct.

FED. R. BANKR. P. 6007(a).

In analyzing a contested abandonment, "Courts defer to the trustee's judgement [sic] and place the burden on the party opposing the abandonment to prove a benefit to the estate and an abuse of the trustee's discretion." *In re Slack*, 290 B.R. 282, 284 (Bankr. D.N.J. 2003), *aff'd*, 112 F. App'x 868 (3d Cir. 2004). "The party opposing the abandonment must show some likely benefit to the estate, not mere speculation about possible scenarios in which there might be a benefit to the estate." *In re Slack*, 290 B.R. at 284, *citing to In re Cult Awareness Network, Inc.,* 205 B.R. 575, 579 (Bankr. N. D. Ill.1997). The Court in *In re Slack* concluded:

The court only needs to find the trustee made:

> (1) a business judgment;
> (2) in good faith;
> (3) upon some reasonable basis; and
> (4) within the trustee's scope of authority.

*In re Slack*, 290 B.R. at 284, quoting *In re Fulton,* 162 B.R. 539, 540 (Bankr. W. D. Mo. 1993).

In this case, the Trustee, in exercising his business judgment, has abandoned the Property on two bases: (1) the Property is not property of the estate; and (2) the Property is overencumbered. Either of these grounds is sufficient to justify abandonment, and both are supported by prior judgments of other courts. The Debtor has, however, offered nothing in response except "speculation about possible scenarios," three of which would require overturning long-standing Orders that were issued by those other Courts (the Order avoiding the Property transfer, Judgment by Confession establishing the Albrecht lien, the Judgment establishing the Osekavage lien, the Order by the District Court for the Eastern District of New York referred to above and the Bankruptcy Court for the Eastern District of New York's Order approving the settlement authorizing the sale of the subject Property over the Debtor's objection) and which this Court has no jurisdiction to address. Further, three of those orders involve transactions or proceedings to which the Debtor was not a party (the Perla mortgage, the Albrecht lien, and the Osekavage lien).

These arguments are all joined in by the Chapter 7 Trustee for Ms. Mergenthaler, who also persuasively argues that the Debtor is using this objection as a means to avoid the Order of the Eastern District of New York that prohibits Debtor "from intervening in any bankruptcy proceeding in the Eastern District of New York, including Rosemary Mergenthaler's bankruptcy case, absent permission of the presiding United States Bankruptcy Judge" (Main Dkt. No. 23, Barnard Affirm., ¶ 9, quoting *Truong v. Cuthbertson*, 2016 U.S. Dist. Lexis 21621 at *8 (E.D.N.Y.

Feb. 22, 2016).[6]  The Trustee argues that this intent is further evidenced by the fact that the effect of the abandonment of the Debtor's alleged interest would be the return of that interest to him, so that he would be free to deal with that alleged property interest himself.  *See generally,* 5 COLLIER ON BANKRUPTCY ¶ 554.02[3] at 554-6 ("Property abandoned under section 554 reverts to the debtor, and the debtor's rights to the property are treated as if no bankruptcy petition was filed").[7] This Court agrees.  Accordingly, this Court finds that the Debtor's objection to the abandonment is improper, without legal or factual basis and plainly designed to further delay the Mergenthaler Trustee's efforts to sell the subject Property as well as to avoid the restrictions and effects of various prior judgments of other courts.  The Trustee is acting well within his business judgment in determining to abandon the Property and is authorized to do so.  The Debtor's objection is overruled.

### D.  <u>Dismissal of the Adversary Complaint</u>

Defendants have filed a cross-motion to dismiss the six-count Adversary Complaint under FED. R CIV. P. 12(b)(6) / FED. R. BANKR. P. 7012(b) for failure to state a claim upon which relief can be granted (Dkt. No. 10).  Debtor has filed an objection/reply (Dkt. No. 12).  The Counts of the Amended Complaint are summarized as follows:

Count 1.  Tortious interference against Broadway and a demand for $84,000 in actual damages, plus $168,000 in punitive damages ($252,000 total demand).

---

[6] In this regard, the Court notes that Truong has also been barred from filing papers in various other Courts.  *See, e.g., In re Truong*, 2015 Bankr. LEXIS 54 at *5-*6 (Bankr. S.D.N.Y. Jan. 9, 2015) (holding that Truong and his wife are permanently enjoined from filing any petition, motion or pleading in the Bankruptcy Court for the Southern District of New York without the court's prior approval).  The Court considered the following prior to its holding: "Judge Glenn limited his injunction against the Debtor's further filings to a period of five years.  In the District Court, however, Judges Oetkin and Engelmayer issued permanent injunctions prohibiting further filings by the Debtor without prior permission from the Court.  The Second Circuit has entered a similar order.  Under the circumstances, the Court believes it appropriate to enter the same relief in this Court as has been entered in the appellate courts."

[7] By citing this law, this Court is not implying or in any way ruling that the Debtor has any rights in the Property.  As noted above, other Courts have already determined that he does not.

Count 2.  Defamation against Broadway and Feldman and a demand for $100,000 in actual damages, plus $200,000 in punitive damages ($300,000 total demand).

Count 3.  Libel against Broadway and Kaminsky and a demand for $100,000 in actual damages, plus $200,000 in punitive damages ($300,000 total demand).

Count 4.  Libel against Broadway and Kaminsky for allegedly violating the May 12, 2005 Order of the Third Circuit in *Truong v. Baker*, which Debtor states enjoined parties from referring to certain findings of forgery[8] and therefore a demand for $1,000,000 in actual damages, plus $2,000,000 in punitive damages ($3,000,000 total demand).

Count 5.  Stay violation against Broadway on or about May 23, 2016, with a demand for $50,000 in actual damages, plus $100,000 in punitive damages ($150,000 total demand).

Count 6.  Declaratory judgment stating that the May 23, 2016 [sic, May 31, 2016 per Judge Edwards's Opinion] is null and void.

Counts 1, 2, 3 and 4 of Debtor's Amended Complaint are based on prepetition conduct and events.  Count 1 arises from Debtor's allegation that Broadway refused to offer Debtor a new lease on terms acceptable to the Debtor in a hallway discussion at the New York Courthouse on May 19, 2016 (Dkt. No. 3, ¶¶ 26-31).  Counts 2, 3 and 4 are also based on prepetition conduct which Debtor alleges occurred on May 19, 2016 and May 20, 2016 in conjunction with the Civil Court proceeding filed by Broadway on April 1, 2016 for Judgment for Possession and Warrant of Eviction (Dkt. No. 3, ¶¶ 33-38).  Debtor alleges that Feldman and Kaminsky undertook the conduct in person on May 19, 2016 and that Kaminsky libeled the Debtor to the Civil Court in a May 20, 2016 letter (Dkt. No. 3, ¶¶ 33-38).

---

[8] As stated above, Debtor has not provided the Court with a copy of the May 12, 2005 Order or properly identified the referenced Third Circuit case by docket number.  Thus, the Court is not able to determine how (or whether) the claims asserted in the Amended Complaint allegedly violate the May 12, 2005 Order.

The conduct alleged in Counts 1, 2, 3 and 4 all occurred before the Debtor filed his bankruptcy petition on May 23, 2016. Therefore, these claims and any damages arising from them are property of the estate. 11 U.S.C. § 541(a)(1). In Chapter 7 liquidation, only the Chapter 7 Trustee has standing to prosecute such claims on behalf of the estate. 11 U.S.C. § 323(a); *In re New Era, Inc.*, 135 F.3d 1206, 1208-09 (7th Cir. 1998); *Cain v. Hyatt*, 101 B.R. 440, 442 (E.D. Pa. 1989) ("[A]fter appointment of a trustee, a Chapter 7 debtor no longer has standing to pursue a cause of action which existed at the time the Chapter 7 petition was filed. Only the trustee, as representative of the estate, has the authority to prosecute and/or settle such causes of action"). The Debtor may prosecute such claims only if and when they are abandoned by the Trustee, an event which has not yet occurred. *See* 5 COLLIER ON BANKRUPTCY ¶ 554.02[3], *supra.* Accordingly, Counts 1, 2, 3 and 4 of the Amended Complaint are dismissed, without prejudice, *sua sponte* by this Court, because the Debtor lacks standing to bring them. 11 U.S.C. 105(a); *Van Leeuwen v. United States*, 868 F.2d 300, 301 (8th Cir. 1989), *cert. denied*, 493 U.S. 838 (1989) (upholding trial court's *sua sponte* dismissal of complaint for lack of standing, failure to state a claim and other deficiencies). "Standing is a threshold issue in federal litigation because it determines 'the propriety of judicial intervention.'" *In re Stanworth*, 543 B.R. 760, 769, 779 (Bankr. E.D. Va. 2016), quoting *Warth v. Seldin*, 422 U.S. 490, 518 (1975). The Court in *In re Stanworth* dismissed the remaining count of debtor's adversary proceeding *sua sponte* for lack of prudential standing when debtor attempted to enforce a contract to which he was not a party. *In re Stanworth*, 543 B.R. at 779. "The issue of standing must be addressed by the Court . . . and cannot be waived by the parties." *In re Indus. Commercial Elec., Inc.*, 2004 WL 1354530 at *4-*5 (Bankr. D. Mass. April 27, 2004) (dismissing *sua sponte* for lack of standing the section 544(b) action filed by the debtor/committee because they were unable to identify an actual creditor).

Counts 5 and 6 arise from Debtor's allegation that the Defendants violated the automatic stay by prosecuting the Judgment for Possession and Warrant of Eviction to conclusion

postpetition.  The Court has already found above that neither Debtor nor the estate had any interest in the Lease on the petition date pursuant to 11 U.S.C. §§ 362(b)(10) and 541(b)(2) so that no stay was violated.  Accordingly, Counts 5 and 6 are dismissed with prejudice for those same reasons.

### IV.    <u>CONCLUSION</u>

For all the foregoing reasons, the Debtor's adversary proceeding is dismissed. Counts 5 and 6 are dismissed with prejudice, while Counts 1, 2, 3 and 4 are dismissed without prejudice. Separate Orders (i) authorizing the abandonment of the Property; (ii) denying the Debtor's motion to enjoin the pending eviction action, for sanctions and other relief; and (iii) dismissing the Complaint as stated above will be entered.

Date:   August 30, 2016                              /s/ Vincent F. Papalia
                                                     VINCENT F. PAPALIA
                                                     United States Bankruptcy Judge